**UNITED STATES DISTRICT COURT**
                   **FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Insight Technology Inc.</u>

    **v.**                                                    Case No. 04-cv-266-PB

<u>Wausau Business Ins. Co., et al.</u>



                           **MEMORANDUM AND ORDER**

    This declaratory judgment action stems from Wausau Business Insurance Company's ("Wausau") refusal to defend Insight Technology Inc. ("Insight") against a lawsuit filed by Night Vision Corporation ("Night Vision"). The insurance policies in question provide coverage for injuries that result from certain enumerated "offenses." One such offense is the "oral or written publication of material that . . . disparages a person's or organization's goods, products or services" ("disparagement clause"). The parties have filed cross-motions for summary judgment proposing competing contextual meanings for the term "disparages." Insight argues that the term encompasses any conduct that a reasonable person would consider disparaging.

Wausau responds by contending that the term is limited to conduct that would support a common law cause of action for disparagement.  If Wausau is correct, Insight is not entitled to a defense because Night Vision's claims in the underlying lawsuit are not based on conduct that would support a disparagement claim.

## I.   BACKGROUND[1]

### A.   The SBIR Grants

Insight and Night Vision are in the night vision optical technology business.  In 1995 and 1996, the United States Air Force awarded Night Vision two Small Business Innovative Research Program grants ("SBIR Phase I and Phase II").  The grants funded production of prototypes for panoramic night vision goggle ("PNVG") equipment.  Am. Compl. ¶¶ 2-3, 25-6.  Night Vision needed a production subcontractor and, at the Air Force's suggestion, it selected Insight.  Id. ¶ 29.  The two companies' relationship was strained from the outset.  Id. ¶ 37.  It reached

---

[1]  I describe the facts in the light most favorable to Insight.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

a boiling point when Night Vision attempted to negotiate a third SBIR grant ("SBIR Phase III") in 1997. According to Night Vision, Insight attempted to exclude Night Vision from further work on the PNVG project. Id. ¶ 40. The Air Force pressed Night Vision to include Insight as a manufacturer in its proposal for SBIR Phase III and the companies entered into ultimately unsuccessful licensing negotiations. Id. ¶ 42-48. In 1999, the Air Force informed Night Vision that Insight's political connections with New Hampshire Senator Bob Smith made it unlikely that the Air Force would approve SBIR Phase III without Insight as an exclusive licensee. Id. ¶ 44. Ultimately, the Air Force denied Night Vision's proposal for SBIR Phase III. Id. ¶ 49.

**B.   The Underlying Lawsuit**

Night Vision sued Insight in the Eastern District of Virginia on May 28, 2003. Its original complaint includes seven counts: (I) breach of confidentiality agreement; (II) theft of trade secrets; (III) tortious interference with business expectancy; (IV and V) tortious interference with contract; and (VI and VII) conspiracy. Compl. ¶¶ 74-131. The gist of the complaint is that Insight and the Air Force engaged in an

"integrated scheme" to deprive Night Vision of the SBIR Phase III contract.  Id. ¶ 43.

Night Vision filed an amended complaint several months later adding claims for breach of contract (Count VIII) and quantum meruit (Count IX).  Am. Compl. ¶¶ 132-46.  The breach of contract count charges that Insight and Night Vision entered into a contract that required Insight to "'interface with government personnel to support the PNVG program, address the systems [sic] benefits, and advocate program funding for a Phase III SBIR award to [Night Vision] and subsequent production award.'"  Am. Compl. ¶ 135 (quoting the Insight-NVC contract).  According to Night Vision, Insight breached the contract by attempting to take over the PNVG program.  Id. at ¶ 137.  In seeking to accomplish this objective, Insight allegedly "engaged in an aggressive campaign to denigrate [Night Vision's] performance under the SBIR Phase II Contract and convince the Government that [Night Vision] should not be awarded a SBIR Phase III Contract."  Id. ¶¶ 41, 138.

The trial court granted Insight's request for summary judgment with respect to seven of the amended complaint's nine counts in February and March of 2004, leaving only Night Vision's

claims for tortious interference with business expectancy and breach of contract.  The court initially granted Night Vision's request for summary judgment with respect to the breach of contract claim, February 27, 2004 E.D. Va. Order, but later vacated its ruling at a hearing on March 11, 2004.  E.D. Va. Doc. No. 194.  On March 14, 2004, the parties resolved their remaining claims by entering into a confidential settlement agreement.

## C.   The Insurance Policies

Insight was covered during the relevant time frame by serial general and umbrella liability policies issued by Wausau.  The policies obligate Wausau to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies."[2]  1998 Commercial Gen. Liab. Coverage Form at 6 (Ex. A to Def.'s Mot. for Summ. J.).  They also provide that Wausau "will have the right and duty to defend the insured against any 'suit' seeking those damages."  Id.  "Personal injury" is defined

---

[2] The parties have provided excerpts of policies from different years.  I quote from the 1998 general liability policy provided by Insight at the summary judgment hearing.  Neither party has suggested that the coverage provided by Wausau changed during the four years that Wausau insured Insight or that liability turns on which year's policy is analyzed.

as follows:

> "Personal injury" means injury, other than "bodily injury,"
> arising out of one or more of the following offenses
> committed in the course of your business, except
> advertising, publishing, broadcasting or telecasting done by
> or for you:
> a.  False arrest, detection, or imprisonment;
> b.  Malicious prosecution;
> c.  The wrongful eviction from, wrongful entry
>     into or invasion of the right of private
>     occupancy of a room, dwelling, or premises
>     that a person occupies provided that the
>     wrongful eviction from, wrongful entry into
>     or invasion of right of private occupancy is
>     by or on behalf of the owner, landlord, or
>     lessor of the room, dwelling, or premises;
> d.  Oral or written publication of material that
>     slanders or libels a person or organization
>     or disparages a person's or organization's
>     goods, products, or services; or
> e.  Oral or written publication of material that
>     violates a person's right of privacy.

1998 Personal and Advertising Injury Liab. Coverage Amendment Endorsement at 3.

Insight notified Wausau on December 18, 2003, that Night Vision's amended complaint makes "allegations that come within the scope of the disparagement offense." Insight Claim Letter at 1 (Ex. 7 to Pl.'s Mot. for Summ. J.). Insight identified paragraphs 41 and 138 of the amended complaint, which mention Insight's "campaign to denigrate" Night Vision, as allegations that are within the scope of the disparagement offense. Id. at

-6-

1-2.

On February 12, 2004, Wausau refused to defend or indemnify Insight, stating that "the complaint does not allege injury arising out of any of the . . . 'personal injury' offenses," including the disparagement offense. Wausau Disclaimer Letter at 3 (Ex. 10 to Pl.'s Mot. for Summ. J.). The present litigation ensued.

## II.  ANALYSIS

Insight's claim for a defense turns on whether the disparagement clause encompasses Night Vision's charge that Insight "engaged in an aggressive campaign to denigrate [Night Vision's] performance under the SBIR Phase II contract." I answer this question by describing New Hampshire's general rules of insurance policy interpretation, outlining each party's proposed interpretation, and explaining why I adopt Wausau's interpretation.

### A.  New Hampshire's Rules of Insurance Policy Interpretation

The New Hampshire Supreme Court recognizes that the interpretation of policy language is a question of law. See,

e.g., Ross v. The Home Ins. Co., 146 N.H. 468, 471 (2001).  Under New Hampshire law, courts must "construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole."  Id. (quotation omitted).  "Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, [courts] accord the language its natural and ordinary meaning."  EnergyNorth Natural Gas, Inc. v. Underwriters at Lloyd's, 150 N.H. 828, 832 (2004).

Ambiguous language is strictly construed against the insurer.  Brouillard v. Prudential, 141 N.H. 710, 712 (1997).  In applying this rule, courts do not create ambiguity where none exists.  Id.  Instead, "[a] clause is ambiguous when contracting parties reasonably differ as to its meaning."  Laconia Rod & Gun Club v. Hartford Accident and Indem. Co., 123 N.H. 179, 182 (1983).  To determine whether there is ambiguity, a court should "'look to the claimed ambiguity, consider it in its appropriate context, and construe the words used according to their plain, ordinary and popular definitions.'"  Id. (quoting Robbins Auto Parts, Inc. v. Granite State Ins. Co., 121 N.H. 760, 764 (1981).

An insurer's duty to defend depends on "'whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy.'" Ross, 146 N.H. at 471, quoting Green Mt. Ins. Co. v. Foreman, 138 N.H. 440, 441 (1994). In certain circumstances, courts may look beyond the pleadings to facts "known or readily knowable by the insurer." Open Software Found., Inc. v. U.S. Fidelity and Guar. Co., 307 F.3d 11, 15 (1st Cir. 2002) (applying Massachusetts law). "When the alleged facts do not clearly preclude an insurer's liability, inquiry may proceed into underlying facts . . . . to avoid permitting the pleading strategies, whims, and vagaries of third party claimants to control the rights of parties to an insurance contract." M. Mooney Corp. v. U.S. Fidelity & Guar. Co., 136 N.H. 463, 469 (1992) (citations omitted).

**B.  Insight's Interpretation**

Insight argues that "disparages" is a "natural and ordinary" synonym for "denigrates." See, e.g., American Heritage Dictionary of the English Language (4th ed. 2000) (defining "denigrate" as "to disparage; belittle"). Because the two words are indistinguishable to a layperson, Insight concludes that its

-9-

alleged scheme to obtain the SBIR Phase III contract by denigrating Night Vision necessarily comes within the scope of the disparagement clause. The fact that the allegations are made in the context of a cause of action for breach of contract is not dispositive because "the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant." Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 271 (1st Cir. 1990) (applying New Hampshire law).

## C. Wausau's Interpretation

Wausau accepts Insight's assertion that an insured's right to a defense depends on the facts that support a claim rather than the legal jargon in which it is expressed. Nevertheless, it argues that the disparagement clause covers only conduct that would support a claim for disparagement under the common law. Relying on the First Circuit's decision in Titan, supra, Wausau reasons that because its policies limit "personal injury" coverage to injuries that result from certain "offenses," each enumerated offense, including disparagement, covers only conduct that could support a common law claim for that offense. Disparagement, Wausau notes, requires the publication of a false statement. See, e.g., Geske & Sons v. NLRB, 103 F.3d 1366, 1373

(7th Cir. 1997); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 820 (9th Cir. 1995); <u>FDIC v. Bathgate</u>, 27 F.3d 850, 871 (3d Cir. 1994); <u>Amerinet, Inc. v. Xerox Corp.</u>, 972 F.2d 1483, 1502 n.34 (8th Cir. 1992); Restatement (Second) of Torts § 623A.  Accordingly, it argues that "disparages" means to belittle through the publication of false information.

**D.   Application**

I agree with Wausau that the result in this case is dictated by <u>Titan</u>.  The insured in <u>Titan</u> argued that it was entitled to a defense against what the underlying complaint characterized as a trespass claim.  898 F.2d at 267.  In rejecting the insured's argument that it was entitled to a defense under the policy's "personal injury" provision because the underlying claim alleged a claim for "wrongful entry," the court first noted that "wrongful entry" was one of the enumerated "offenses" for which coverage was available under the "personal injury" provision. <u>Id.</u> at 271-72.  It then defined the term by looking to the analogous cause of action for trespass.  <u>Id.</u> at 272.  Because trespass requires an intentional invasion of another's property and the underlying action did not claim that the invasion was intentional, the court reasoned that the complaint did not

trigger the insurer's duty to defend.  Id.

Although the Titan court construed the "wrongful entry" clause rather than the disparagement clause, Insight has failed to explain why the court's reasoning should not apply to all of the specified "offenses" for which personal injury coverage is available.[3]  Because disparagement is one of the "offenses" enumerated under the "personal injury" provision, Titan requires a court to look to the elements of the common law cause of action for disparagement to determine the kind of conduct that the claim was intended to cover.  As Wausau correctly notes, disparagement requires the publication of false information.  Thus, the disparagement clause covers only injuries that result from the publication of false statements.  This conclusion is consistent with the holdings of other courts that have confronted the same

---

[3] Insight might argue that Wausau's interpretation is incorrect because it requires knowledge of the law that is beyond the ken of a reasonable insured.  The problem with this argument is that it is tantamount to an attack on Titan.  The insured in Titan could no more be expected to understand that the wrongful entry offense at issue in that case required intentional conduct than Insight could be expected to understand that disparagement requires the publication of false information.  The Titan court was well aware of the New Hampshire Supreme Court's insurance policy construction rules when it issued its decision.  Thus, I am not free to reach a result in this case that is inconsistent with the Titan court's reasoning process.

question.  See, e.g., Lamar Advertising Co. v. Continental Casualty Co., 396 F.3d 654, 665 (5th Cir. 2005); Microtec Research Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 972-73 (9th Cir. 1994).[4]

Insight's fallback argument is that it is entitled to a defense even if Wausau's interpretation is correct because the amended complaint can be construed to allege a claim of denigration through the publication of false information.  I disagree.  As I have noted, Night Vision based its claims primarily on its theory that Insight and the Air Force worked together to deprive Night Vision of the SBIR Phase III contract. Although the amended complaint alternatively claims that Insight mounted a campaign to denigrate Night Vision, it does not allege that the campaign was based on the publication of false information.

---

[4] The New Hampshire Supreme Court's recent decision in Broom v. Continental Casualty Co., 2005 WL 3051024 (November 16, 2005), is not inconsistent with Wausau's argument.  Although the Broom court relied on the disparagement clause in ruling that the insureds were entitled to a defense against claims that they had engaged in a "campaign to disparage" the plaintiffs in the underlying action, the underlying complaint expressly charged that the disparagement campaign was based on the dissemination of false information.  Id. at *1.  Thus, Broom does not address the problem presented by the present case.

Looking beyond the amended complaint, the only evidence in the record describing the alleged denigration campaign is a reference that the court in the underlying action made in one of its orders to a PowerPoint presentation that Insight allegedly provided to the Air Force. In its order initially granting Night Vision's motion for summary judgment on the breach of contract count, the court concluded that the PowerPoint presentation breached the contract because it provided a "'Road Map'" detailing how "the Air Force should (1) not award a SBIR Phase III contract to [Night Vision]; (2) award the next PNVG development and/or production contract based on an open bidding process; (3) award Insight the next PNVG development and/or production contract as the winner of the open bidding process." February 27, 2004 E.D. Va. Order at 9-10. The order did not suggest, however, that the presentation included false information about Night Vision. Rather, the court merely concluded that the presentation supported the breach of contract claim because it was inconsistent with Insight's contractual duty to advocate on Night Vision's behalf. Id. at 10. The record contains no other evidence concerning the issue. Accordingly, Insight cannot credibly claim that its alleged campaign to

-14-

denigrate Night Vision was based on a contention that it made false statements about Night Vision to the Air Force.

### III.   CONCLUSION

Having carefully considered the parties' respective arguments, I agree with Wausau that Insight is not entitled to a defense because the complaint in the underlying action does not seek to hold Insight liable based on conduct that would support a common law disparagement claim.  Because "[t]he duty to defend is broader than the duty to indemnify," Winnacunnet Co-Op School Dist. v. National Union Fire Ins. Co. of Pittsburgh, 84 F.3d 32, 35 n.6 (1st Cir. 1996), Wausau is also entitled to judgment with respect to Insight's claim for indemnification.  Wausau's motion for summary judgment (Doc. No. 12) is granted and Insight's motion for summary judgment (Doc. No. 11) is denied.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

December 19, 2005

cc:  Shaun McPartland Baldwin, Esq.
     Andrew Dunn, Esq.

Bruce M. Engel, Esq.
Todd Hathaway, Esq.